IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA YOTS, o/b/o, )
RICHARD A. SEACHRIST, deceased )
    Plaintiff )
 )
       v. ) 2:16-CV-107
 )
COMMISSIONER OF SOCIAL )
SECURITY, )
    Defendant. )

MEMORANDUM and ORDER

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion for summary judgment (ECF No. 12) will be denied, the defendant's motion for summary judgment (ECF No. 17) will be granted, and the decision of the Commissioner will be affirmed.

On January 26, 2016, Patricia Yots on behalf of Richard A. Seachrist (collectively termed the plaintiff), by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf. prior to June 7, 2013.

1

The plaintiff filed an application for disability and supplemental security income benefits on July 15, 2013 (R.141-148). Benefits were denied on October 24, 2013 (R.66-73). On November 5, 2013, the plaintiff requested a hearing (R.78-82), and pursuant to that request a hearing was conducted on March 26, 2015 (R.39-49). In a decision filed on April 15, 2015, an Administrative Law Judge granted benefits from June 7, 2013 (R.21-34). On June 18, 2015, the plaintiff requested reconsideration of this determination (R.17-19), and upon reconsideration, and in a decision dated December 11, 2015, the Appeals Council affirmed the prior decision (R.1-3). The instant complaint was filed on January 26, 2016.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act..

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act prior to June 7, 2013..

At the hearing held on March 26, 2015 (R.39-49), the plaintiff appeared with counsel (R 41), and testified that he was born on September 18, 1954 (R.42); that he earned a GED (R.47-48) and that he worked as a laborer (R.45).

The plaintiff also testified that he filed his claim based on arthritis (R.42) and that his lung cancer was discovered in 2008-2009 (R.44).

At the hearing a vocational expert was called (R.46-47) and testified that the plaintiff's prior work was unskilled to semi-skilled and heavy in nature (R.46-47) and that he did not have any transferrable skills which could be applied to less strenuous jobs (R.47).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

> It is provided in 42 U.S.C. Section 1382c(a)(3) that:
>
> (A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.
>
> (B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
>
> * * *
>
> (D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
>
> It is also provided that:
>
> Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental

4

Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act prior to June 7, 2013.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff was hospitalized at West Penn Hospital from November 13, 2008 through November 17, 2008 for syncope of questionable etiology following his passing out. Upon discharge, 81 mg. of aspirin daily and a nicotine patch were prescribed (R.235-262).

The plaintiff was treated at West Penn Hospital between November 13, 2008 and September 16, 2009. EEGs were reported as abnormal "because of the mild intermixed slowing in the background." He was also treated for recurrent syncope. (R.305-363).

The plaintiff was treated at St. Margaret's Hospital between February 20, 2007 and October 6, 2009 for right knee swelling, minimal left hip arthrosis, degenerative disc disease and chronic small cerebral vessel ischemic disease (R.364-378).

The plaintiff last met the special earnings requirements of the Act on June 30, 2010 (R.27).

The plaintiff was treated at Kahn Medical Associates between November 26, 2008 and June 7, 2013. A final diagnosis of bilateral osteoarthritis with worsening pain and right upper eye lid stye was made (R.263-272). On June 7, 2013, the date on which the plaintiff was deemed disabled, Dr. Kahn noted that the plaintiff suffered from bilateral osteoarthritis of the hip with worsening pain.

The plaintiff was determined to be disabled commencing June 7, 2013 (R.21-34).

The plaintiff received treatment at UPMC Community Medicine Inc. on October 1, 2013 for osteoarthritis. Physical activing as tolerated was recommended. (R.273-296).

A hip x-ray taken on October 10, 2013 revealed mild arthritis. Degenerative right shoulder changes were also noted. (R.297-298).

The plaintiff was treated at the Scherer Family Medical Center between September 16, 2009 and August 14, 2014 for a torn rotator cuff, chronic airway obstruction, lumbar scoliosis, diverticulosis, tobacco abuse, chronic obstructive lung disease and emphysema. (R.379-464).

Radiology reports for the period from April 24, 2014 through October 20, 2014 revealed a mild obstructive lung defect. (R.465-469).

In a note dated November 18, 2014, Dr. Mark Geogiadis noted treatment for metastatic lung cancer with limited survival expectation. (R.299-304).

Records from St. Margaret's Hospital for the period from September 21, 2005 through January 20, 2015 demonstrate the presence of lung and liver cancer. Evidence of a malignancy did not appear until late October 2014. (R.470-553).

The plaintiff was treated at the St. Margaret's Cancer Center between November 4, 2014 and March 9, 2015. He was diagnosed with stage IV metastatic lung cancer following an October 2014 diagnosis. A stage IV liver lesion was also noted. The plaintiff continued to smoke, and maintenance therapy was regarded as non-beneficial (R.554-599).

The plaintiff's death on August 23, 2015 was attributed to lung cancer (R.234).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law

Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

      Based on the evidence presented, the Commissioner concluded:

> After careful consideration of all the evidence, I conclude that the claimant was not disabled prior to June 7, 2013, but became disabled on that date and has continued to be disabled through the date of this decision. The claimant was not under a disability within the meaning of the Social Security Act any time through June 30, 2010, the date last insured.

***

Since the alleged onset date of disability, July 3, 2008, the claimant has had the following severe impairments: cervical degenerative disc disease. Beginning on the established onset date of disability, June 7, 2013, the claimant has had the following severe impairments: osteoarthritis; hip, shoulder and neck pain, chronic obstructive pulmonary disease and lung cancer…

The cervical degenerative disc disease has been determined by medically acceptable evidence including signs, symptoms and laboratory findings. From the evidence … I find that this impairment constituted more than slight abnormalities had more than a minimal effect on the claimant's ability to perform basic work-related activities for a continuous period of 12 months prior to the established onset date.

The medical records indicate that the claimant, prior to the established onset date, was diagnosed with a seizure [disorder] and hip and shoulder pain, however, there were no functional limitations…

Treatment records from Abdul Khan, M.D. in November 2008 and 2009 show that physical examinations were essentially normal… Subsequent treatment records in 2009 to 2013 shows that the claimant remained seizure free and examinations continued to be essentially normal. Records also show that these impairments were under good control with appropriate treatment and there was no indication in the medical record that these impairments had imposed any significant limitations on claimant's ability to engage in basic work-related activities prior to the established onset date…

The impairments of osteoarthritis, hip, shoulder and neck pain and lung cancer have been determined by medically acceptable evidence including signs, symptoms and laboratory findings… I find that these impairments as of June 13, 2013 have caused significant limitations in the claimant's ability to perform basic work related activities…

The impairments of osteoarthritis, hip, shoulder and neck pain, COPD and lung cancer have been determined by medically acceptable evidence including signs, symptoms and laboratory findings… I find that these impairments as of June 13, 2013, have caused significant limitations in the claimant's ability to perform basic work related activities.

***

After careful consideration of the entire record, I find that prior to June 7, 2013, the date the claimant became disabled, the claimant had

the residual functional capacity to perform the full range of medium work…

The medical evidence, prior to June 7, 2013, reveal[s] that the claimant had multiple pain complaints, however … his complaints were not accompanied by significant relevant abnormal findings on physical examination or imaging studies…

In this regard, treatment records [of] Abdul Khan, M.D. show that … when seen in June 2013, he complained of increased pain in his bilateral hip pain, right shoulder pain and leg numbness. Examination revealed reduced range of motion of the bilateral hips. Diagnoses included hip pain, osteoarthritis in multiple sites and gait disturbance…

Records in October 2013, from Dr. Josefina Paderes show that examination also showed decreased range of motion in the shoulders and hips. X-rays … in October 2013 revealed degenerative changes of the shoulder and hips with moderate arthrosis of the hips.

Considering the totality of the … documentary evidence and related testimony, it fully appears that, in the instant case, that prior to the established onset date, objective signs and clinical findings indicated a higher level of functioning that that alleged by the claimant at the hearing…

Viewing the totality of the circumstances, little in the documentary evidence suggests that prior to the established onset date, the severity, frequency and duration of physical discomfort was as persistent, intrusive, or progressive as the claimant has alleged. Although the claimant sought and received treatment for his pain symptoms, review of the documentary evidence suggests the claimant's alleged symptoms and functional limitations were not supported by the claimant's actual physical condition prior to June 7, 2013… since functioning was generally within normal limits despite some symptoms of pain. Further, the claimant's treatment prior to the established onset date was generally conservative in nature with no frequent hospitalizations, emergency room visits or outpatient visits or any surgical treatment of any condition. The claimant had not generally received the type of treatment one would expect for a totally disabled individual. Treatment notes prior to June 7, 2013 indicate that examinations were generally within normal limits. Further testing and imaging studies reveals only minimal findings. The records also indicate that when the claimant was compliant with his medical treatment, he was functionally stable.

In addition, although the claimant had longstanding history of neck pain, it fully appears that prior to the established onset date, the claimant was capable of functioning well enough to help care for pets, prepare meals, dust, sweep, drive a car, shop in stores, pay bills, watch movies, play cards, fish, spend time with others and independently care for his personal needs. Such an array of activities is indicative of a greater level of functioning prior to June 7, 2013, that that described by the claimant…

With respect to medical opinions, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even ha[s] limitations greater than …determined in this decision prior to the established onset date…

Additional medical records received at the hearing level, warrants a reduction in the residual functional capacity to the light level of exertion, as of June 7, 2013, as this is consistent with the totality of the evidence…

I find that beginning on June 7, 2013, the claimant's allegations regarding his symptoms and limitations are generally credible. The treatment records since June 7, 2013 document increased complaints of pain symptoms despite intensive treatment. Moreover, x-rays of the hips in June and October 2013 revealing moderate osteoarthritis with x-rays of the shoulders revealing degenerative changes. The claimant has also been diagnosed with COPD and a torn rotator cuff. More recently, treatment records from UPMC Cancer Center show that in 2014, the claimant was diagnosed with lung cancer.

Accordingly, the evidence supports the finding that the claimant's worsening pain would not allow him to perform more than light work on a sustained basis.

Since July 3, 2008, the claimant has been unable to perform any past relevant work …

[P]rior to June 7, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed…

Beginning on June 7, 2013, considering the claimant's age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

> Beginning on June 7, 2013, based on a residual functional capacity for the full range of light work a finding of "disabled" is directed…
>
> The claimant was not disabled prior to June 7, 2013, but became disabled on that date and has continued to be disabled through the date of this decision… (R.25-34).

The plaintiff last met the special earnings requirement of the Act on June 30, 2010. While the record demonstrates that the plaintiff suffered from non-disabling arthritis for several years, it was not until on June 7, 2013 that his physician opinioned that his pain was worsening resulting in an award of benefits from that date. His cancer was not detected until October 2014. Nevertheless, without any basis in the record he here seeks to establish an onset date prior to June 7, 2013. From the evidence there is no basis to conclude that the Commissioner's determination is not based on substantial evidence and there is nothing to support the plaintiff's allegations of an earlier onset date.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law <u>Chavarriaga v. New Jersey</u>, 806 F.3d 210 (3d Cir.2015). In the instant case, there are no material factual issues in dispute and the decision of the Commissioner is supported by substantial evidence. For this reason the plaintiff's motion for summary judgment (ECF No. 12) will be denied, the defendant's motion for summary judgment (ECF No. 17) will be granted, and the decision of the Commissioner will be affirmed.

Dated: August 5, 2016    s/ Robert C. Mitchell,
United States Magistrate Judge